IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| BARBARA TRUESDELL and JOHN DILL, | ) |
| Plaintiffs | ) |
| vs. | ) Civil Action No. 3:05CV459-H |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### INTRODUCTION

This action is a companion case to that of *Suter v. United States*, originally filed in this Court as Civil Action No. 3:04CV358-MU. In that action, the Government filed a motion to dismiss on the same grounds as those urged here, and the Court granted that motion. The *Suter* case is now on appeal to the United States Court of Appeals for the Fourth Circuit. The case has been fully briefed, oral argument has been heard, and the case is pending the decision of the Court of Appeals. Plaintiffs in this case now argue that this Court in *Suter v. United States* erred as a matter of law and that the Court should reconsider its ruling anew in this action.

This case is brought pursuant to the Federal Tort Claims Act ("FTCA"), which waives the sovereign immunity of the United States with respect to civil claims sounding in tort and authorizes actions by plaintiffs asserting such claims against agents or agencies of the United States government. The Plaintiffs were victims of a massive securities fraud perpetrated on them

by a number of individuals and organizations. The activities of this organized criminal conspiracy were investigated and exposed by the Federal Bureau of Investigation ("FBI"). In the course of its investigation, the FBI participated in the criminal scheme itself to such an active degree--even to the extent of profiting from it financially--that the Plaintiffs suffered extensively as a direct result of the government's actions, possibly as much or more as they suffered from the actions of the criminals.

Plaintiffs therefore made demand on the FBI for redress in damages, pursuant to the requirements of the FTCA. That demand was refused by the FBI, and Plaintiffs thereafter filed this action. The FTCA provides for a general waiver of sovereign immunity and also contains a number of exceptions to that general waiver, most notably the discretionary function exception. At issue in this case is whether the actions of the government's agents in this case fell within those exceptions or whether its actions went beyond the intended scope of such exceptions so as to render the United States liable to the Plaintiffs.

## FACTS OF THE CASE

The facts alleged in the Complaint show that the government actively participated in and ran the criminals' operation against its victims. The operations which the government set up in this case were not the typical "front" operations employed by government agents to catch criminals. Rather, they were the real thing--actual criminal enterprises, owned and operated by the criminals, with the active assistance of the Government, and engaging in actual crimes intended to steal money from the victims.

The Government's actions were not limited to merely making false misrepresentations designed to conceal its undercover operations. The government participated in most of the

criminal acts which the criminals themselves committed--setting up phony business entities, collecting funds from investors, diverting those funds into the hands of the criminals, laundering money, and so forth. Whatever privilege the Government has to make false statements about its activities can hardly extend to running the criminal enterprise itself.

## I. THE ACTION IS NOT BARRED BY THE REPRESENTATION EXCEPTION BECAUSE MORE THAN MERE REPRESENTATION HAS BEEN ALLEGED.

The allegations of the Plaintiffs' Complaint make clear that the government did far more than merely make fraudulent statements to investors. Rather, the government's agent, FBI special agent John Vega, actively helped to run the criminals' extensive operations. The Complaint alleges that the government helped to form Southtech Holdings, Inc. a stock-for-debt merger scam designed by some of the other criminal participants to avoid their liability to injured creditors and investors. Complaint ¶¶ 24, 25. Agent Vega actually served as the chief operating officer of Southtech Holdings, Inc. and contributed to its start-up capital Complaint ¶¶ 25-26.

The Government's agent also helped the criminals to form another company which aided them to steal money from investors, namely the Caribbean Merchants Bank, a phony shell corporation ostensibly engaged in making legitimate investments overseas. Complaint ¶¶ 27-29.

The government also maintained the criminals' general corporate operations, brought in money from a number of investors, and assisted the criminals in laundering money overseas derived from its criminal activities, amounting to hundreds of thousands of dollars. Complaint ¶¶ 30, 31. The Government's role was not simply to investigate crimes. It actually profited financially from its activities as well. Complaint ¶ 34.

A summary disposition of the case at this point would be entirely inappropriate. *See Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)

3

(party moving for dismissal for lack of subject matter jurisdiction should prevail only if material jurisdictional facts are not in dispute and moving party is entitled to prevail as matter of law); *Austin v. Reynolds Metals Co.*, 327 F. Supp. 1145, 1155 (E.D. Va. 1970) (party is not required to state jurisdictional basis of his claim with precision; in federal courts one need only state claim upon which relief can be granted).

In short, the Plaintiffs' claim in this case is not limited to fraudulent misrepresentations made by the government to them, but rather the direct participation by the government in the underlying criminal venture that stole their money.

## II. THE ACTIONS OF THE GOVERNMENT'S AGENT ARE NOT COVERED BY THE DISCRETIONARY FUNCTION EXCEPTION.

The issue in undercover operations cases is typically whether the Government's conduct is covered by the exception to the FTCA's general waiver of sovereign immunity for "discretionary functions." The discretionary function exception provides that:

> The provisions of this chapter [the FTCA] and section 1346(b) of this title [granting federal jurisdiction over actions in tort] shall not apply to
>
> > Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). Application of the discretionary function exception turns on (1) whether the employee's act involves an element of judgment or choice and (2) whether the conduct is based on considerations of public policy. *United States v. Gaubert*, 499 U.S. 315, 325-26 (1991).

> [T]he legislative history discloses that such exception was plainly intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals. Congress wished to prevent

4

"second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.

*United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 798 (1984).

Plaintiffs are not seeking any such "second-guessing." What they allege had nothing to do with legitimate policy questions nor with anything other than pure and simple criminal conduct by agents of the Government. No policy making was involved. How could it be? No one, the Government included, would argue that the decision to help a criminal enterprise steal money from the public was a matter of policy or discretion.

> In considering the application of the exception, first, the court must identify the conduct at issue. Next, the court asks two interrelated questions: "(1) Is the conduct itself discretionary? (2) If so, does the exercise of discretion involve (or is it susceptible to) policy-related judgments?"

*Montijo-Reyes v. United States*, 436 F.3d 19, 24 (1st Cir. 2006).

Certainly, the very nature of undercover operations demands the exercise of discretion. But this exception to liability is not all-inclusive. Whether the government's actions are exempt from liability turns on the nature of the specific conduct at issue.

> It is only those choices or decisions made by a government actor, under the implied or express authority derived from statute or regulation, and in furtherance of the policy goals of the regulatory regime, that are protected from liability.

*McMellon v. United States*, 395 F.Supp.2d 422, 428 (S.D.W. Va. 2005). The applicability of the discretionary function exception to the FTCA is determined by the nature of the conduct, rather than the status of the actor, with the focus being on whether the actor's conduct is of *the nature and quality that Congress intended to shield from tort liability. Williams v. United States*, 50 F.3d 299, 309 (4th Cir. 1995).

5

In this case, the conduct complained of is extensive participation in the crimes being investigated. It would be surprising if such conduct were intended to be shielded from liability, and the courts have held that it is not. Outrageous criminal behavior, or conduct which unreasonably exposes victims to criminal activities, is not immune from civil liability. See *Perry v. Larson*, 794 F.2d 279, 284 n.1 (7th Cir. 1986) ("it would be illogical to extend good faith immunity to a government official who has intentionally violated an individual's constitutional rights"); *Greene v. United States*, 454 F.2d 783, 787 (9th Cir. 1971) (line should be drawn where government has "not simply attach[ed] itself to an on-going [criminal] operation for the purpose of closing it down and prosecuting the operators[, but rather] . . . helped first to [.]establish, and then to sustain, criminal operations") (in entrapment context); *Friedman v. United States*, 677 F. Supp. 1160, 1168 (N.D. Ga. 1987) (FBI had duty of care toward attorney performing undercover work for FBI with respect to foreseeable risks associated with authorized undercover activity); *Socialist Workers Party v. Attorney General of U.S.*, 642 F. Supp. 1357, 1416 (S.D.N.Y. 1986) (Socialist Workers Party's claims against government arising from FBI's disruptive activities, surreptitious entries and use of informants were not barred by discretionary-function exception to FTCA as part of FBI authority to investigate subversive activities, where FBI operations were directed against entirely lawful and peaceful activities); *Swanner v. United States*, 309 F. Supp. 1183 (M.D. Ala. 1970) (where United States, through agents of Internal Revenue Service, had knowledge of generally dangerous nature of undercover work in which plaintiff special employee was engaged and knowledge of threats made concerning informers generally and plaintiff specifically prior to bombing of his house, failure to provide protection was not decision made in exercise of "discretionary function" within meaning of FTCA).

As Judge Friendly has held,

> [T]here is certainly a limit to allowing governmental involvement in crime. It would be unthinkable, for example, to permit government agents to instigate robberies and beatings merely to gather evidence to convict other members of a gang of hoodlums. Governmental "investigation" involving participation in activities that result in injury to the rights of its citizens is a course that courts should be extremely reluctant to sanction. Prosecutors and their agents naturally tend to assign great weight to the societal interest in apprehending and convicting criminals; the danger is that they will assign too little to the rights of citizens to be free from government-induced criminality.

*United States v. Archer*, 486 F.2d 670, 676-77 (2d Cir. 1973).

The discretionary function exception also does not apply in this case since the Government's agents violated their own internal rules. In its Undercover Operations Manual, the Department of Justice prohibits "Participation in Otherwise Illegal Activity by Undercover Employees," stating that except when specifically authorized, "no undercover employee shall engage in any activity that would constitute a violation of Federal, state, or local law if engaged in by a private person . . ." Undercover & Sensitive Operations § IV(H).[1] Moreover, "an undercover employee shall not . . . initiate or instigate any plan to commit criminal acts except in accordance with Part V (Avoidance of Entrapment)." Undercover & Sensitive Operations § IV(H)(3)(b).

Admittedly, the Government is authorized by its regulations to conduct misleading "front" operations, but here again the Government violated its own regulations. Such a front operation is a business actually owned and operated *by the Government*, not a criminal venture owned and operated by the criminals. This is made clear in the DOJ regulations governing this case, which define the term "proprietary business entity" to mean a commercial entity owned, controlled or operated wholly or partly by the FBI. Undercover & Sensitive Operations (USAG), II(D), at p. 3. In other words, the regulation refers to a commercial "front" owned and operated

---

[1] The Government's Undercover Operations Manual was filed by the Government with its Motion to Dismiss in this case.

by the government, and hardly justifies the Government in going into business with the criminals. The criminal Esposito organization, in which the FBI participated so actively, was not owned or controlled by the FBI at all. It was purely and simply criminal.

Where government agents are not following the rules governing their conduct, as the Plaintiffs will show at trial if given the chance, there is no discretionary function. *United States v. Gaubert*, 499 U.S. 315, 324 (1991) (if employee violates mandatory regulation, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy); *cf. Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988) ("the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere to the directive"); *Medina v. United States*, 259 F.3d 220, 226 (4th Cir. 2001) (in order for discretionary function exception to apply, so that government has immunity from actions involving challenged conduct, challenged conduct must be product of judgment or choice, and based on considerations of public policy; exception does not apply when federal employee is merely following federal statute, regulation, or policy that specifically prescribes course of action); *Fisko v. U.S. General Services Admin.*, 395 F.Supp.2d 57, 65 (S.D.N.Y. 2005) ("If an employee violates a mandatory regulation, then there is no protection from liability as the action was contrary to policy and the discretionary function exception does not apply").

### III. THE CONDUCT OF THE GOVERNMENT'S AGENT IS ACTIONABLE UNDER NORTH CAROLINA LAW.

The Government argues that a private person could not be liable for negligently conducting or supervising an undercover criminal investigation and that therefore it should not

8

be liable for the wrongs it committed in this case. Memorandum in Support of United States' Motion to Dismiss at 13. This misapplies the principle. Naturally, the activities of the government are going to differ from those of private individuals in ways that would render meaningless a wooden comparison of the one with the other. If this were indeed the test for government liability, then liability would never attach to the government's actions, no matter how outrageous and no matter how extensive the harm caused to citizens, because by definition a private person is never in the position of the government, and certainly never "supervise[es] an undercover criminal operation."

What the law actually requires in this context is merely that there be some *analogous* private person liability. Thus, "[t]he United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The point is to analogize the conduct alleged to similar activities in a private context, not to recreate a governmental function in private life. In the case at bar, liability does not attach against the Government because it was running an undercover operation, whether negligently or not. It attaches because the Government was stealing money. The analogous conduct on the part of a private party would be that of converting funds or property, and conspiring to do so by operating criminal operations.

The error implicit in the Government's argument was explicitly demonstrated by the United States Court of Appeals for the Ninth Circuit in another case involving undercover operations:

> We take explicit issue with the [view] that the Federal Tort Claims Act does not permit a suit for any governmental action taken in the course of an international undercover operation against drugs, because . . . an individual would never act in "like circumstances", and the government has waived its immunity only as to torts committed by private persons in "like circumstances." Any governmental operation is different from any private action; what is meant by "like

9

circumstances" is analogous circumstances not identical ones. For example, even if no private person ran a lighthouse to aid navigation, the government would be liable for negligently running a lighthouse because a private person would be liable for negligently undertaking to help another; the broad analogy makes the circumstances "like"; they need not be "the same." Indian Towing Co. v. United States, 350 U.S. 61, 64-66, 76 S.Ct. 122, 124-25, 100 L.Ed. 48 (1955). A private company might well be liable in tort if, in the course of seeking information about the products of an unscrupulous competitor, it exposed its own employee to the risk of torture or death at the latter's hands.

*Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

Here, the government's conduct, for which any private party would certainly be liable by way of analogy, included forming and operating criminal ventures, assisting in the running of those criminal ventures, raising capital for criminal ventures, laundering money to conceal its wrongs from its victims, and profiting at the expense of the victims of crimes.

## CONCLUSION

For all the reasons shown, the various exceptions to the government's broad waiver of tort liability in the Federal Tort Claims Act do not apply here. The Plaintiffs have fully complied with the terms of the Act and are entitled to be heard in their claims for redress of the harms inflicted against them by agents of the Government.

Dated: March 14, 2006

*John F. Hanzel by R3newkirk*
John F. Hanzel, Esquire
Attorney for the Plaintiffs
N.C. State Bar No. 6186

Hanzel & Newkirk, LLP
19425-G Liverpool Parkway
Cornelius, North Carolina 28031
Tel. (704) 892-1375
Fax (704) 892-5784

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of March, 2006, I served a true and correct copy of the above and foregoing Plaintiffs' Memorandum In Opposition To Defendant's Motion To Dismiss For Lack Of Subject Matter Jurisdiction on counsel for Defendant via the Electronic Case Filing System (CM/ECF) and via United States Mail, first-class postage prepaid, to

>Madeline Henley, Esq.
>Trial Attorney
>Torts Branch, Civil Division
>U.S. Department of Justice
>P.O. Box 888
>Benjamin Franklin Station
>Washington, D.C. 20044

/s/ *[signature]*